Case number 21-13-13, Bari Wood v. 36th District Court at all. Argument not to exceed 15 minutes per side. Ms. Gordon, you may proceed for the appellant. Good morning, Your Honors. I'm Deborah Gordon. I represent the plaintiff in this case, worthy appellant Bari Blake Wood. I'm reserving three minutes for my rebuttal. Members of the bench, I think the Bolton case written by Judge Straunch is an excellent template for exactly what happened to my client, who was terminated as a chief magistrate and magistrate at the 36th District Court. Of course, this is a First Amendment retaliation case. In Bolton, this court found the key issues are, was the, in that case, officer's speech as a citizen, and was that officer's speech a matter of public concern? The court said we must look at context, form, and content to decide that. I would pause here to point out that my case was dismissed on the pleadings. There was absolutely no discovery. From the cases I reviewed, First Amendment retaliation cases, mainly out of this circuit and Supreme Court, that's highly unusual. Usually, there's a discovery period to flesh these issues out. In any event, our pleadings are more than sufficient and very clear to make the argument crystal clear that my client's comments were clearly as a matter of public concern. What Magistrate Judge Barry Blake Wood talked about was significant civil rights violations. She was a magistrate judge at the 36th District Court. I don't know that there's much dispute about whether the things spoken of were a matter of public concern. Thank you. That seems pretty clear to me, anyway. I think what I'm struggling with is the scope of her duties, how her language fell outside the scope of her duties. Tell us what your best claim is in the complaint that she spoke outside the scope of pretty broad duties as an employee. Judge Strange, let me go back to your case. Let me go back to Bolton and let's recall what happened in Bolton. The officer was in an arbitration. What did he complain about? He complained about things like CPR training. That is definitely part and parcel, potentially, of his duties. This court found that that wasn't an issue of public concern. Even though an officer at an arbitration calling out, let's say, incompetence or problems within the training modalities, part of that definitely qualified because it was also a matter of public concern. That is what the circuit found. This whole concept of... Every time you say public concern, you're kind of losing me, just so you understand where I'm coming from on this. The whole point of Garcetti is that you have government speech. It's, to me, not helpful at all to talk about whether government speech... It's government speech because it's an issue of public concern that's just not very helpful. Think of prosecutor's offices. It's a very significant matter of public concern, how they charge, whom they charge, what they're going to do with law enforcement. Think about the different debates in the country on that front. I understand. I get it. It's a matter of public interest. That's not speaking to me. I get it. I mentioned it because that is the starting point, typically, in these cases to look at. I take your point, Chief Judge Sutton. Let's just put this case to the side. I'm just thinking of magistrates in the federal court system. You've got magistrates who are... Their warrants are really important when it comes to magistrates. That's a big part of their job. It's a 24-7 part of their job. What they do and when they issue them, what the rules are, how do you comply with this recent case versus that one, I can't imagine anything more core to what their job description is. I hear you. I hear you. We're going to say that the next time there's a dispute within the magistrates, they can start talking to people outside the courts about a lawsuit? It just stops me.  It's time for you to take me off the cliff. I would like to. I take your point about the matters of public concern. Let's talk about Garcetti. Of course he was writing about matters of public concern, but he was literally being paid a salary to write about matters of public concern. Magistrates paid a salary to figure out the right rules for issuing warrants. Chief Judge Sutton, they are required to do that with regard to their own docket. Let me explain to you what happened with Barry Blake Wood. I'm going to point you to MCL 600.8512. It's a state statute that sets forth all of the duties for magistrate judges and chief judges in Michigan. It's a very specific, constricted list of duties. No magistrate and no judge is responsible for articulating civil rights violations that are now court-wide. That is not a part of any judge's duties. My client saw that other magistrate judges, not herself, and that she saw that other 36 district court judges were routinely violating the law on arraignments. As it turned out, a lawsuit was brewing. A civil rights case brought by- She has access to all of that because she's a fellow magistrate? But that's not the criteria in this court. In fact, this court has said over and over again that public employees are in a unique situation because they have access to information. It's basically whistleblower magistrates can be whistleblowers as to other magistrates. But Judge, this is not a whistleblowing case. No, but it's the same concept. Of course. I disagree with you on that because my client, when you blow the whistle about civil rights violations of how an entire court is operating, the directives and training have been given. Going back to the training case of Judge Straunch, where the officer complained about his training, my client complained that the magistrate judges were being trained to do unlawful arraignments. Let me tell you a little bit about my specific pleadings because I think what you're saying, Your Honor- Let me say something that I think helps you and then you try to work with it and make it apply here. Okay. I have little doubt that your client could speak about what was going on when it came to say warrants in another court. So that seems to me issue of public concern. I don't think that's a part of her job to opine about what another court system's doing. So that would work. Okay. And I think you're saying this case is like that because each magistrate is a world unto themselves and there isn't a court-wide view. Each magistrate has their own job and so this case is like my hypothetical. She is allowed to critique the other magistrates publicly. Okay. Well, I don't think the analogy you gave completely lines up. My client is not responsible for any other judge's docket, number one. Number two, she was talking about another court. She was talking about the judges at the 36th District Court and if you read my complaint, this court had a weekend court system that they joined in on with other courts in the local area and she reported that in those other courts, when they took turns in arraignments, that these arraignments were being done in an unconstitutional manner. So what I'm here to say is my appointed contractual magistrate judge is responsible for her docket. But once she starts seeing that throughout the court, training is being done with regard to illegal arraignments and once she brings that up to the chief judge, Nancy Blount, of the 36th District Court, she is told point blank, we don't want to hear this from you. This is not the court's concern. How do you view the chief judge's directive as affecting your client's duties? Could you not say that the directive itself is telling her, as part of your duties, you are not to be speaking outside the, I mean, so if it is part of her duties, why isn't that part of government speech? I mean, isn't the test here whether or not the speech is part of her duties as a government employee? Well, she was told point blank, it's not. She was told point blank by Nancy Blount, the chief judge of the 36th District Court, don't say this to us again. This is not the court's concern. So the cases where the speech falls into more of a, it's part of your duties, is where it literally is part of your duties. I've given you an example of Garcetti. I can give you the example of the case where the school teacher went in and complained about her class size and it was personal to her, which is another point I want to make to you all before I sit down. Understand this. My client never complained about anything that was personal to her, and this is a key factor in all of these First Amendment cases. Are you just here complaining about something that's affecting your day-to-day doings and what's harming you and your ability? Is this just a beef, a typical employee beef? Let me ask you about another specific thing in your complaint that I was a little confused about. There are allegations about a conversation with an acquaintance about ACLU. I don't think the complaint says who the acquaintance is, does it? I'm sorry, your honor? The complaint doesn't say who the acquaintance was? No. This is only... Can you say who that is? Was that someone in the chain of command? No, no, no. Somebody outside of the court. Outside the court? Yes. My client is obviously... She's been working at the court for years. She knows a lot of people that are interested in law and what's going on at the court. I just want to give you a brief chronology here. My client started raising up within the building in 2018 that arraignments were being done illegally. But this really became much more acute beginning in March of 2019 where it was crystal clear the training was being done and people were doing unconstitutional arraignments. My client then... I see, as I said earlier, I see no problem with saying that this is a matter of public concern because it surely is. What I'm struggling with, and I'd like to hear a little bit from you on, is her position as chief magistrate judge and the allegations of the complaint about her responsibility to train personnel to address issues with the court, part of which are the complaint allegations. Help me understand how those can be private speech in light of what's been alleged to be her job responsibilities. Okay. My client's job responsibilities are very strictly circumscribed by MCL 600 8.512. Now, in the lower court, the defendant did attach my client's contracts. In fact, I'm showing you several inches of documents that were attached to the original motion. But here they are. And if you go to some of the exhibits, for example, ECF... Well, I'll tell you what. All you need to tell me is where in the complaint shows that the allegations, the factual allegations of what she was undertaking, fall outside her job scope or become outside her job scope because of what happened within her work. Well, I don't think there's any cases that say what's outside of your job scope. I mean, the cases I'm relying on don't say this is outside of the scope of your job. But I'm going to again... I'm actually talking about factual allegations. Okay. Well, okay. So the factual allegations are, yes, my client assisted in training. But the job description, Judge Strong, for a magistrate and a chief magistrate are identical. The contractual language for a magistrate and a chief magistrate are identical. There's a small bump up in pay. But by law and by contract, the job duties are the same. My client took it upon herself, and now that she was chief, to try to tell... So the chief magistrate makes more money than the other magistrates. I did say there was a small bump up in pay. We ought to import that. I said that. I agree. But other than that, the duties are exactly the same. And she takes her direction from the chief judge of the 36th District Court. That is who she reports to. And if you look further into my complaint, into the statute, the chief judge of the 36th And that includes how arraignments are handled. That is definitely not the duty of my client. So to the extent that I'm being asked, Judge Strang, what do I have that shows that is not my client's duty, I would direct you to the part of my complaint where I talk about the chief judge of the 36th District Court being 100 percent in charge of and responsible for enforcing the law. The magistrates and the other judges enforcing the law. My client seemed to be the only person in the building that was upset that these arraignments were being done illegally. I think it's unfair for the panel to say, certainly without any discovery, that this somehow fell automatically within her official job duties. We do not plead that. We plead that this was outside the scope of her official duties. And your best evidence of that is when the chief judge says, that's not your job? No. My best evidence of that is the statute that prescribes her duties. And similarly, the law that prescribes the duties of the chief judge. And then the comment from Nancy Blount, the chief judge, don't be, we don't want you involved in this. Stay out of this. So once she escalates it, and she knows there's a lawsuit coming, she now emails, this is now outside of her duties clearly, she now sends an email to in-house counsel and to the chief judge. And she says, listen, guys, I've heard there's a lawsuit coming. And you need to know this, and this is exactly what I've been warning you about. And now, here it is. Now they set up a meeting with Barry Blakewood. You've gone well over, so we'll give you your full rebuttal and maybe more, but let's hear  I think I want to illuminate things. All right. Thank you. May I just say one? Okay. No. I'll hold it. Thank you. Good morning. Good morning. May it please the court. Christopher Trebilcock on behalf of the Appalese. The issues before this court are really pretty straightforward and simple in my opinion. Plaintiff was the chief magistrate in the 36th District Court, which is the largest district court in the country, handles more cases anywhere else in the country. And we don't need to look any further than plaintiff's complaint and allegations to understand what her duties are. Paragraph 18 of her complaint, plaintiff admits that, quote, she provided oversight and guidance to the other, to the court's other magistrates. Oversight and guidance. I didn't hear that once from plaintiff or appellant. Paragraph 21 of her complaint. Just to make sure I'm understanding the point you're making, is it possible there's a distinction between what she did when she was chief magistrate versus when she wasn't? I don't believe so. I think if you look at what magistrate judges, magistrate judges in general have to follow the law. There's a judicial canon, judicial canon 3B talks about how all judges should diligently ensure that the courts are administering justice in accordance with law and are responsible to all court officials and all judges to assist in that. So I think all magistrates had that duty. I think that a dispute in terms of whether or not it was her role as chief magistrate to bring concerns about how arraignments are happening amongst the fellow magistrates to the chief judge, I think it's even clearer that a chief magistrate, that that falls squarely within their job duties. I'm sorry, go ahead. One quick question then. If that fell solely within her duties, then when the person who has the full duty says to her, that's none of the court's business, I don't want you doing that, why doesn't that tell us that we're now in an individual personal space? I would say two things. One is that, again, the allegation wasn't that that isn't your duties. The allegation or the complaint, I believe that the allegation and the complaint was, we don't care, we don't want to hear about it. Doesn't mean that that wasn't part of... Not the court's problem, I think is what was alleged. Not the court's problem. If it's not the court's problem, then she's talking about it individually, isn't she? No, I don't believe so. Not the court's problem speaks generally of the court in general, not whether or not it's her job duties. She reports to the chief judge, she's in charge of arraignments, to say that it's not a magistrate judge's job duties to ensure that the constitution is being followed, and if I believe as a magistrate that it's not being followed, it's not my duty to report up to the chief judge. And that'd be like saying, here, we're sitting in the Northern District of Ohio, the magistrate judge Parker has no obligation if he sees another magistrate judge not adhering to the law, it's not his job duty to go to the chief judge here in the Northern District to raise those issues. I just don't think that that's a standard. The standard is when you look at, did they go outside their chain of command? Did they go outside the walls of the courthouse? That's the case. I want to ask about that. So there is an allegation about this conversation with an acquaintance, and that did go outside the walls of the courthouse. How do you deal with that conversation? Isn't that a basis of speech for which she's claiming retaliation? I don't believe that's the way it's pled. That's pled in that she had a conversation with someone where somebody gave her a heads up and said, hey, look, your court's about to be sued on these issues. As her role as a chief magistrate, she comes and brings that conversation back in. Every conversation that she has on the street that's about her official job duties doesn't elevate to protected speech. When the allegation wasn't, the allegation isn't that she had this conversation, it's the allegation that she brought it back inside the courthouse and talked to the chief judge and the in-house counsel. It's that conversation, not the conversation outside the courtroom. But she let them know, I think you could read the complaint to say she was letting the chief judge know that she'd had this conversation. Can you not read it that way? I didn't. I don't and didn't read it that way. I read it as I was, that I brought this complaint into the courthouse. It wasn't that I had the, she wasn't disciplined. She's not alleging that she was retaliated against for having this conversation outside the courthouse. So that conversation outside the courthouse really is kind of extraneous to the claim? Is that your position? That's my position, yes. Correct, your honor. Correct. You know, I think if you look at your rules as a chief magistrate, in her complaint she admits, you know, going back to the complaint again, because we're at the 12B6 stage, you don't have to look any further than the complaint. Even though we attached public records such as the scale guidance for magistrate judges that I think are part of inherent and flesh out the duties at that stage, which is a question of law for the court below, what were her duties, and was she speaking as a citizen or part of her job duties? And that's where I think plaintiff conflates, and we don't dispute just like you recognize Judge Sutton, a public concern is that all judges uphold their oath of office and follow the Constitution. There's no dispute of that. But just because you're talking on a subject of public concern doesn't give rise to First Amendment protection. It has to be outside of your role. And in this case, we had complaints that as the chief judge, she thought that her other judges weren't following the training. What would be the permissible way to engage in protected speech here for her? Would it require her to leave her job first? Is that basically the gist of it? No, I don't believe so. I think if you look at the Pucci case that plaintiff cites, in that case, the clerk, she was a deputy clerk of the district court in Dearborn, Michigan. She went to scale. She went outside the scale, I'm sorry, the Supreme Court administrative office, which is the administrative office that provides administrative support to all courts across Michigan. And in that case, the deputy clerk went to scale and complained about a judge inserting his religious beliefs into his decisions. That was enough because she went outside the courtroom and complained to others outside the confines of the courthouse. In this case... Just back to this case, does that mean she could have just gone to a bar and met with the ACLU lawyer and said, you're not going to believe what they're doing? No, I don't believe so. I believe that it has to rise to the level of a complaint. And then you still have to link that to the adverse action. And I don't think in the allegations, there is no causal connection pled. I think the case authored by Judge Strach is exemplary there. It's the Box LVO Grady case in 2018 where you wrote, Judge, quote, summary reference to a single five-headed defendants does not support that each defendant is liable for retaliation. If you look in this complaint, paragraph 55 and 56, that's all that plaintiff alleges. She says defendants then therefore retaliated. Defendants did this. I think the issue here is not which defendant. I think the issue falls back more to the question that Judge Bush was asking you about what becomes private speech. And so your position is that the fact that she spoke separately with someone out in the magistrates were doing that they shouldn't have been doing. And then she reported honestly back to her employer, I'm hearing from somebody outside the courthouse that you're going to be sued for this. Why is that not public speech that is not ancillary to this case but is at the core of what her complaint is? I think my position on that is there's two things. One is the allegation is not that it was that she had the speech or that she met with somebody at a bar from the ACLU about this lawsuit, right? The allegation is that it's the speech that she had with the chief judge about the subject matter of that. That's the protected speech. She's trying to bootstrap a conversation she had with a bar inside the courtroom. Well, suppose she had actually gone to the bar as Chief Judge Sutton was in his hypo saying and spoken directly with the ACLU attorney and given information to the ACLU attorney to bring the lawsuit and then went back and told her chief judge, hey, I just had this conversation in the bar with the ACLU attorney and told them about this. You're saying that would be government speech. That would not be, and she's subsequently fired because of the chief judge. Would that scenario not fall within private speech that potentially you could bring a lawsuit for? I think in the way that you set it up, that could be. There certainly could be private speech. I don't think this case is where there is private speech. I think in that case, you would get to the third or fourth element about whether there was legitimate reasons to retaliate even if it was, or to terminate even if it was. Wouldn't it come down to whether, what's the causation? Was the causation that the person was fired because they breached confidences of the court versus a retaliation for the speech? Correct. In fact, I think it's pretty obvious that it would be a confidences problem. Yeah. Correct. That's a summary judgment or trial issue. The real argument here is why is this appropriate to dismiss? I would just ask you, on the face of this complaint, why do we not have at least a couple of instances of private speech? The ones with the acquaintance, the ones that Judge Bush has asked you about, that would take it outside her capacity as an employee. And then, it's just a question of going forward with discovery and figuring out what happens. You may win in the end, but that's not the question here. Absolutely, Your Honor. I think you look at, I would say one is there aren't a couple of conversations outside regarding this issue. There is one conversation that she says someone, and it's not even alleged to be a complaint that she was complaining to someone at the ACLU, it's that somebody gave her information. So what if, is it because she had a conversation outside the courtroom? What would be the difference if the ACLU had sent her a letter, said you're the chief magistrate and we believe that you and the court are violating the Constitution, and she took that letter down to the chief judge. Would that then say that that's not private communication? Why is it different because somebody came to her, knowing she's the chief judge, she's a public officer, and says, hey, I think that you're, she didn't come to her as a citizen, she came to her because you're the chief judge, or chief magistrate judge, and hey, to give you a heads up, your court's about to be sued, and you're about to be sued in your official capacity, and in fact, she was sued in her official capacity, and the allegation specifically alleged that she's one of the ones that violated the Constitution, so, and it was her training that she put in place as chief judge that set up an unconstitutional system. Those are the allegations of the ACLU lawsuit. I don't think, but if you just look at the complaint, why it's appropriate at the 12b6 stage, is you look at her complaint, paragraph 18, she provided oversight and guidance to the other magistrate judges. Paragraph 21, she created written guidance and training material for magistrate judges on topics, how to create legally proper misdemeanor and felony arraignment hearings. The issues that she brought up, the chain of command, within the courtroom walls, all related to things she admits in her complaint, were squarely within her job duties. She alleges that she had a conversation that someone tipped her off, that the court was about to be sued. I don't believe that that allegation is sufficient at the pleading stage to give rise to protected speech. It just isn't, and I think if you look at the cases, Fox, the Bolton case, I actually think supports our decision as opposed to, our case as opposed to cuts against it. You look at Bolton, the reason why the Bolton court found that his speech was protected was because his job doesn't require him to be a union official or participate in an arbitration. That was the key to that case. It wasn't that it was a matter of public concern or involved his job duties. It was because his speech that was a protected conduct occurred during an arbitration hearing. I think the language in Bolton actually supports our conclusion that when you look at was the speech in furtherance of her duties, that's the standard. If you're a chief magistrate judge or one of the magistrate judges here in the Northern District of Ohio and you're out on the street and somebody says, hey, your court, your job, you're about to be sued in your official capacity because somebody thinks you're violating the law and you come back from lunch and you go up to your boss and you say, hey, I just heard we're about to be sued, that seems to me to fit squarely within somebody's official duties, part and parcel of their duties, particularly when you're talking to somebody who's a chief magistrate judge. Thank you. All right. Thank you. We'll hear a rebuttal. Ms. Gordon. Ms. Gordon, before you get started, I just want to follow up on this acquaintance, these allegations. Are you contending that those form any part of your complaint, the conversation made with the acquaintance? It's, no, not really. Okay. Tangentially. So that's not any of the, you're not alleging that that speech is a basis for retaliation by the- No. Okay. Thank you. Point well taken. It's tangential because it leads to what happens. So let me try to put this into context here. First of all, I think it's important to just keep one thing in mind as you're looking at these facts as to what happened here, and it's the causal connection. Because as we know from Mount Healy, conduct, since respondents satisfied the burden of showing that his conduct was constitutionally protected, which we're at least saying here that her speech could have been unless it's within the scope of her duties, and was a motivating factor in petitioner's decision not to rehire him. The district court should have gone on to determine whether petitioner had shown by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. Why do I say that here? I say that- So are you saying there is a but-for causation requirement for pleading? Essentially. But what I'm saying to you is this. Understand that the defendant has never articulated a reason why Barry Blakewood was fired. Ever. What do you say in the complaint that plausibly states that she was fired, that but for her protected speech, she would not have been fired? What do I say in my complaint? Yeah, what allegation do you have in your complaint? Okay, well here are our allegations in the complaint. We say that in paragraph 41, on May 29, 2019, after the 36th District Court learned about the pending ACLU lawsuit, which by the way is still ongoing, there was a meeting held and my client was called into the meeting. And at the meeting, she reported again, I have been telling you all since 2018 that this is illegal and that you are doing these warrants in an illegal manner. I say in paragraph 42 that she was questioned in detail. At this point now, everybody was on high alert. There was in-house counsel present and all of the key players were present. And I say in paragraph 42, plaintiff was questioned at length about her conversation with her acquaintance. So Judge Bush, that's just where the acquaintance thing comes in. This court now knows, wait, we're about to be sued, Barry Blakewood is going to testify that she has known about this and forewarned everybody. They now have a problem with Barry Blakewood. She is not on their defense team anymore. She is in a different box with regard to her interest in the upcoming litigation. And we do plead this. And this is what leads to her termination. So long as she complained internally and it was basically ignored and she was told by the Chief Judge, we don't want to hear about this, it was fine. But what set this in motion was the lawsuit. And this is when the meetings began. In paragraph 45, I state, plaintiff unequivocally told counsel that not only did she advise the court of a legal basis for the potential lawsuit before the facts giving rise to it occurred, but she also advised the court of similar legal issues with regard to warrants and felony arraignments on multiple occasions. Paragraph 46. During this meeting. So you're pretty far over. So maybe you could start to bring it together with not too many dependent clauses in this last sentence. Fair enough. Paragraph 46. She expresses her concern again. She sends an email. Now what happens is we get a new Chief Judge, McConnickle, for the 36D. He learns about it in November. And there's one thing. I guess just to cut to the chase, if you don't mind, my last question. The only allegation I see in your complaint talking about causation is in paragraph 68. And you say plaintiff was motivated at least in part by plaintiff's exercise. I don't see that as being but for causation. Being alleged. Well, there are some cases that talk about various standards, Judge Bush. That may be the way we characterized it. But I agree. But understand this, Judge Bush, defendant has never provided a reason for her termination whatsoever. They have, unlike all of the other cases that we have cited here, where there was a balancing test on this causation question, for example, again to the Bolton case, yes, he engaged in protected speech, but there were reasons given for his termination. So whether it's but for or motivating, in a way, makes no difference in this case, Judge Bush, because defendant has not articulated a reason. And what we say is, she had to be broomed out because she was now a threat to the court. Because she had been complaining about illegal arraignments, and now litigation was ongoing. She needed to be moved out. And I have one email that is attached to, from defendant's pleadings, where there is an email from her replacement, which says, I am going to look forward to supporting you, in the Ross litigation. Hence, my theory is that my client made her complaints, the court could live with that until they knew litigation was coming. At that point, the hammer started to fall on Barry Blake Wood. She was questioned extensively and stuck to her guns. That is not a part of her official job duties. Period. Full stop. All right. Thank you. Thank you very much. Thank you, Judge. We appreciate your written submissions. And thank you to both of you for helpful oral arguments. We're grateful. Thank you. Pleasant to visit Cleveland. Yes. Yes. The case will be submitted, and the clerk may adjourn court. This honorable court is now adjourned.